Query    Reports    Utilities    Help    Log Out

ADRMOP,RELATE

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:23-cv-05439-EMC

Fralix v. 23andMe, Inc.
Assigned to: Judge Edward M Chen
Demand: $5,000,000
Relate Case Case: 3:23-cv-05147-EMC
Cause: 28:1332 Diversity-Other Contract

Date Filed: 10/23/2023
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Elaine Fralix**
*Individually and on behalf of all others
similarly situated*

represented by **Eric Marc Poulin**
Anastopoulo Law Firm LLC
32 Ann Street
Charleston, SC 29403
843-614-8888
Fax: 843-494-5536
Email: eric@akimlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**23andMe, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/23/2023 | 1 | COMPLAINT against 23andMe, Inc. ( Filing fee $ 402, receipt number ACANDC-18764932.). Filed by Elaine Fralix. (Attachments: # 1 Civil Cover Sheet)(Poulin, Eric) (Filed on 10/23/2023) (Entered: 10/23/2023) |
| 10/23/2023 | 2 | Proposed Summons. (Poulin, Eric) (Filed on 10/23/2023) (Entered: 10/23/2023) |
| 10/23/2023 | 3 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Elaine Fralix.. (Poulin, Eric) (Filed on 10/23/2023) (Entered: 10/23/2023) |
| 10/24/2023 | 4 | Case assigned to Magistrate Judge Susan van Keulen. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within |

| | | two business days. Consent/Declination due by 11/7/2023. (as, COURT STAFF) (Filed on 10/24/2023) (Entered: 10/24/2023) |
|---|---|---|
| 10/24/2023 | 5 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 1/16/2024. Initial Case Management Conference set for 1/23/2024 09:30 AM. (mcl, COURT STAFF) (Filed on 10/24/2023) (Entered: 10/24/2023)** |
| 10/24/2023 | 6 | Summons Issued as to 23andMe, Inc. (mcl, COURT STAFF) (Filed on 10/24/2023) (Entered: 10/24/2023) |
| 11/02/2023 | 7 | WAIVER OF SERVICE Returned Executed filed by Elaine Fralix. Service waived by 23andMe, Inc. waiver sent on 10/31/2023, answer due 1/2/2024. (Poulin, Eric) (Filed on 11/2/2023) (Entered: 11/02/2023) |
| 11/09/2023 | 8 | 2ND CLERK'S NOTICE Re: Consent or Declination: Plaintiff(s) shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. Consent/Declination due by 11/24/2023. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jhf, COURT STAFF) (Filed on 11/9/2023) (Entered: 11/09/2023) |
| 11/20/2023 | 9 | **Judicial Referral for Purpose of Determining Relationship of Cases re 23-cv-5147-EMC. Signed by Judge Susan van Keulen on November 20, 2023. (svklc2, COURT STAFF) (Filed on 11/20/2023) (Entered: 11/20/2023)** |
| 11/30/2023 | 10 | **ORDER RELATING CASES. Signed by Judge Edward M. Chen on 11/30/2023. (vla, COURT STAFF) (Filed on 11/30/2023) (Entered: 11/30/2023)** |
| 12/01/2023 | 11 | **ORDER REASSIGNING CASE. Case reassigned to Judge Edward M Chen for all further proceedings re Related Case Order. Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Magistrate Judge Susan van Keulen no longer assigned to case. Reassignment Order signed by Clerk on 12/1/2023. (Attachments: # 1 Notice of Eligibility for Video Recording)(bw, COURT STAFF) (Filed on 12/1/2023) (Entered: 12/01/2023)** |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| *12/21/2023 07:25:17* | | |
| **PACER Login:** | lindsaykschuyler | **Client Code:** | 178849.010700 |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-05439-EMC |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
  *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
  *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
  *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Additional Attorney Listed on Signature Page*

*Attorneys for Plaintiff Elaine Fralix*

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Elaine Fralix,<br>Individually and on behalf of all others similarly situated,<br><br>        Plaintiff.<br><br>      v.<br><br>23ANDME, INC.,<br><br>        Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1)California's Unfair Competition Law ("UCL") § 17200 – Unlawful Business Practice;**<br>**(2) Negligence**<br>**(3) Breach of Implied Contract**<br>**(4) Invasion of Privacy**<br>**(5) Unjust Enrichment**<br>**(6) Declaratory Judgment**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

### <u>CLASS ACTION COMPLAINT</u>

Plaintiff Elaine Fralix ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant, 23ANDME, Inc. ("Defendant" or "23ANDME"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to her own actions and investigation of counsel, and upon information and belief as to all other matters, as follows:

CLASS ACTION COMPLAINT       1

## NATURE OF THE ACTION

1.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII")[1] of Defendant's current and former customers including but not limited to: Names, sex/gender, date of birth, genetic ancestry results, profile photos, and geographical information.

2.     23ANDME had an obligation to safeguard Plaintiff's PII, but did not.

3.     On or about October 6, 2023, 23ANDME detected a cyber-intruder, referred to by 23ANDME as a "threat actor" who had forced entry to information on 23ANDME's servers (the "Data Breach").[2]

4.     On or about October 20, 2023, Defendant experienced another Breach.[3]

5.     In total, over 20 million pieces of information have been leaked to the public at large.[4]

6.     Particularly, this Breach targets racial minorities and this information has already been disbursed on the dark web.[5]

7.     Notably, Defendant states that this Breach was a violation of it's "terms of service".[6] This notation by Defendant is troubling, as Defendant anticipated some sort of possible cyber-attack similar to the one at hand but rather than doing anything substantive to prevent such an attack, only writing a set of rules.[7]

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal oridentifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.
[2] https://blog.23andme.com/articles/addressing-data-security-concerns
[3] https://www.darkreading.com/attacks-breaches/23andme-hacker-leaks-new-tranche-of-stolen-data-
[4] Id.
[5] https://www.bleepingcomputer.com/news/security/23andme-hit-with-lawsuits-after-hacker-leaks-stolen-genetics-data/
[6] https://blog.23andme.com/articles/addressing-data-security-concerns
[7] https://blog.23andme.com/articles/addressing-data-security-concerns

8.     In sum, Defendant makes it appear that an online actor received this data by obtaining user's passwords and then inputting the information into the website. This is troubling, as it is well known that people often use several passwords that interchange.[8]

9.     It is well known that some hackers and bad actors use this fact to their advantage and seek to retrieve information based upon using the same passwords throughout websites.[9]

10.    Defendant knew or should have known that its user's passwords would be the same or similar passwords as those used by the user's on other websites.

11.    It is a common practice for a website requiring password login, such as Defendant, to use multifactor authentication in which a user must provide secondary information obtained from another device or source and then input that information into the login website to log in to an account.

12.    Often, this process takes the form of the user, or person attempting to log in, receiving a text message containing a code that must be input into the website's login page. Foreseeably, this entire ordeal could have been avoided if Defendant installed multifactor authentication requiring someone attempting to log in to receive a text message from the true account user's phone and then input the text message's code into the website's login screen. But instead, Defendant knowingly and purposefully, decided against multifactor authentication as a required or routine use, at the demise of its own customers.[10]

13.    Making matters worse is the fact that this process of Multifactor authentication is mentioned as a recommendation, but the service was not a routine or required part of the log in and data storage process by Defendant.[11]

---

[8] https://www.enzoic.com/blog/8-stats-on-password-reuse/
[9] https://www.hypr.com/security-encyclopedia/password-reuse#:~:text=Password%20reuse%20is%20a%20person's,the%20poor%20usability%20of%20passwords.
[10] https://www.onelogin.com/learn/what-is-mfa
[11] https://blog.23andme.com/articles/addressing-data-security-concerns

14. Defendant is a California corporation that specializes in genetic analyzation. Defendant's entire operating system is an online virtual system in which the user sends off DNA to be analyzed and reviews the findings through a website operated by Defendant.

15. 23ANDME knew or should have known of the increasing number of well-publicized data breaches that have occurred in the United States. And yet, 23ANDME failed to adequately secure and upgrade its systems and failed to provide notice to affected individuals within a reasonable amount of time.

16. Plaintiff and Class Members entrusted 23ANDME with their sensitive and valuable PII. Plaintiff and Class Members did not know that 23ANDME's data security was inadequate.

17. 23ANDME has caused harm to Plaintiff and Class Members by collecting, using, and maintaining their PII for its own economic benefit but failing to protect that information: 23ANDME did not maintain adequate security systems, did not properly archive PII, allowed access by third parties, and did not implement sufficient security measures.

18. Plaintiff brings this action on behalf of all customers of 23ANDME whose PII was compromised as a result of 23ANDME's failure to:

      a. Adequately protect its customers' PII;

      b. Warn customers of its inadequate information security practices; and

      c. Effectively secure hardware, data, and information systems through reasonable and effective security procedures.

19. The Data Breach was the result of a sophisticated, intentional, and malicious attack by professional cybercriminal hackers and was not the result of an accidental disclosure by a 23ANDME employee. Thus, there is an increased and substantial risk that the victims will experience identity theft or fraud that is sufficiently imminent.

20. Plaintiff and Class Members have suffered injury as a direct and proximate result of 23ANDME's conduct.

21. These above-mentioned injuries to Plaintiff and the Class Members include:

a. Lost or diminished value of PII, a form of property that 23ANDME obtained from Plaintiff and Class Members;

b. Out-of-pocket expenses associated with preventing, detecting, and remediating identity theft and other unauthorized uses of their PII;

c. Opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time;

d. The continued and certain increased risk that unauthorized persons will access and abuse Plaintiff's and Class Members' unencrypted PII that is available on the dark web;

e. The continued and certain increased risk that the PII that remains in 23ANDME's possession is subject to further unauthorized disclosure for so long as 23ANDME fails to undertake appropriate and adequate measures to protect the PII;

f. Invasion of privacy; and

g. Theft of their PII and the resulting loss of privacy rights in that information.

22.     As a direct and proximate result of 23ANDME's breach of confidence and failure to protect the PII, Plaintiff and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuses of their PII; ongoing monetary loss and economic harm; loss of value of privacy and confidentiality of the stolen PII; illegal sales of the compromised PII; mitigation expenses and time spent on credit monitoring; identity theft insurance costs; credit freezes/unfreezes; expense and time spent on initiating fraud alerts and contacting third parties; decreased credit scores; lost work time; and other injuries. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class

Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

24.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

25.    This Court has personal jurisdiction over Defendant because the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District. Defendant's principal place of business is also located in this District.

26.    Venue in this district is proper in this Court pursuant to 18 U.S.C. §1391(b)(1) because Defendant resides in this District.

## DIVISIONAL ASSIGNMENT

27.    Pursuant to Civil Local Rule 3-2(c), a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Santa Clara County, California, and this should be assigned to the San Jose Division.

## PARTIES

28.    Plaintiff is an individual who is a citizen of the State of South Carolina residing in Lexington which is located within Lexington County.

29.    Plaintiff was a user of Defendant's services and received an email from Defendant confirming that her data was breached.

30.    Plaintiff suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Plaintiff's PII, a form of property that 23ANDME obtained from Plaintiff; (b) violation of Plaintiff's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

31.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

32.     23ANDME, Inc., is a Delaware corporation registered with the California Secretary of State, with its principal place of business and headquarters located at 223 N. MATHILDA AVENUE, SUNNYVALE, CA 94086.

## FACTUAL ALLEGATIONS

33.     Defendant collected the PII of Plaintiff and Class Members to analyze their DNA for commercial purposes. As such, Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

34.     Plaintiff and Class Members relied on 23ANDME's sophistication to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

35.     On October 6, 2023, October 9, 2023, and October 20, 2023 Defendant announced leaks of its data, stating[12]:

**Update: October 20, 2023 9:35 PM PST**

*As part of the ongoing security investigation, we have temporarily disabled some features within the DNA Relatives tool as an additional precaution to protect the privacy of our customers.*

36.     Further, Defendant stated:

**Update: October 9, 2023 8:25 PM PST**

*What actions has 23andMe taken?*

*Our investigation continues and we have engaged the assistance of third-party forensic experts. We are also working with federal law enforcement officials.*

*We are reaching out to our customers to provide an update on the investigation and to encourage them to take additional actions to keep their account and password secure. Out of*

---

[12] https://blog.23andme.com/articles/addressing-data-security-concerns

*caution, we are requiring that all customers reset their passwords and are encouraging the use of multi-factor authentication (MFA).*

*If we learn that a customer's data has been accessed without their authorization, we will notify them directly with more information.*

*Please continue to follow this blog for updates as our investigation continues.*

37.    On October 4th, 2023, Defendant stated:

We recently learned that certain 23andMe customer profile information that they opted into sharing through our DNA Relatives feature, was compiled from individual 23andMe.com accounts without the account users' authorization.

After learning of suspicious activity, we immediately began an investigation.  While we are continuing to investigate this matter, we believe threat actors were able to access certain accounts in instances where users recycled login credentials – that is, usernames and passwords that were used on 23andMe.com were the same as those used on other websites that have been previously hacked.

We believe that the threat actor may have then, in violation of our Terms of Service, accessed 23andMe.com accounts without authorization and obtained information from certain accounts, including information about users' DNA Relatives profiles, to the extent a user opted into that service.

**Committed to Safety and Security**

23andMe is committed to providing you with a safe and secure place where you can learn about your DNA knowing your privacy is protected. We are continuing to investigate to confirm these preliminary results. We do not have any indication at this time that there has been a data security incident within our systems, or that 23andMe was the source of the account credentials used in these attacks.

At 23andMe, we take security seriously. We exceed industry data protection standards and have achieved three different ISO certifications to demonstrate the strength of our security program.  We actively and routinely monitor and audit our systems to ensure that your data is protected.  When we receive information through those processes or from other sources claiming customer data has been accessed by unauthorized individuals, we immediately investigate to validate whether this information is accurate. Since 2019 we've offered and encouraged users to use multi-factor authentication (MFA), which provides an extra layer of security and can prevent bad actors from accessing an account through recycled passwords.

## Recommendations

We encourage our customers to take as much action to keep their account and password secure. Out of caution, we recommend taking the following steps:

- o Confirm you have a strong password, one that is not easy to guess and that is unique to your 23andMe account. If you are not sure whether you have a strong password for your account, reset it by following the steps outlined here.
- o Please be sure to enable multi-factor authentication (MFA) on your 23andMe account. You can enable MFA by following the steps outlined here.
- o Review our Privacy and Security Checkup page with additional information on how to keep your account secure.

23andMe is here to support you. Please contact Customer Care at customercare@23andme.com if you need assistance with navigating these important steps to protect your account.

38. The unencrypted PII of Plaintiff and Class Members has and may even further already end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII of Plaintiff and Class Members.[13]

39. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members.

40. Because Defendant had a duty to protect Plaintiff's and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

41. Plaintiff relied on the sophistication and security of Defendant and its network to keep her PII confidential and securely maintained, to use this information for commercial purposes only, and to make only authorized disclosures of this information. Plaintiff had the

---

[13] https://www.bleepingcomputer.com/news/security/23andme-hit-with-lawsuits-after-hacker-leaks-stolen-genetics-data/

understanding that this highly sensitive PII was confidential and would be properly safeguarded from misuse and theft.

42.     23ANDME is well aware of its legal privacy obligations, the risks of cyber threats, and that it had obligations created by the FTC Act, contract, industry standards, and common law to keep Plaintiff's PII confidential and to protect it from unauthorized access and disclosure.

43.     Plaintiff relied on the promises and duties of 23ANDME and its subsidiaries to keep her sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

44.     In the course of their dealings, Plaintiff provided 23ANDME with: Names, sex/gender, date of birth, genetic ancestry results, profile photos, and geographical information.

45.     23ANDME had a duty to adopt reasonable measures to protect Plaintiff's PII from unauthorized disclosure to third parties.

**The Data Breach was a Foreseeable Risk of which Defendant was on Notice.**

46.     It is well known that PII, including Social Security numbers, is a valuable commodity and a frequent, intentional target of cyber criminals and hackers. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

47.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

48.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[14]

49.     And, as stated earlier, password reuse hacking is a known risk.[15]

---

[14] https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed October 23, 2023).
[15] https://security.georgetown.edu/csam-2020/raise-your-hand-if-you-reuse-your-passwords/#:~:text=Password%20reuse%20attacks%20occur%20when,and%20money%20to%20be%20stolen.

CLASS ACTION COMPLAINT                10

50.     In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

51.     Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

52.     Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

53.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

54.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own present and prior acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, 23ANDME failed to take appropriate steps to prevent the PII of Plaintiff and the Putative Class from being compromised.

**23ANDME Had a Duty to Plaintiff and the Putative Class to Properly Secure their PII.**

55.     At all relevant times, 23ANDME had a legal and equitable duty to Plaintiff to properly secure her PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff, and to *promptly* notify Plaintiff when Defendant became aware that her PII was compromised.

56. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between 23ANDME and Plaintiff. The special relationship arose because Plaintiff and Class Members entrusted 23ANDME with their PII when they were customers.

57. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

58. Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a. Maintaining a secure firewall configuration;

    b. Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c. Monitoring for suspicious or irregular traffic to servers;

    d. Monitoring for suspicious credentials used to access servers;

    e. Monitoring for suspicious or irregular activity by known users;

    f. Monitoring for suspicious or unknown users;

    g. Monitoring for suspicious or irregular server requests;

    h. Monitoring for server requests for PII;

    i. Monitoring for server requests from VPNs; and

    j. Monitoring for server requests from Tor exit nodes.

**The Value of Personal Identifiable Information ("PII").**

59. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen

identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.[16]

60.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> "A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems."[17]

61.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

62.     Even a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[18]

---

[16] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Oct. 23, 2023).

[17] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at:* https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Oct. 23, 2023).

[18] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Oct. 23, 2023).

63.     As one would expect, this data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[19]

64.     Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing, give false information to police, and obtain tax returns or open fraudulent credit card accounts in Plaintiff's names.

65.     The Private Information compromised in this Data Breach is static and difficult, if not impossible, to change (such as Social Security numbers).

66.     The injuries to Plaintiff were directly and proximately caused by 23ANDME's failure to implement or maintain adequate data security measures for the victims of its Data Breach.

### 23ANDME Also Failed to Comply with FTC Guidelines.

67.     Federal and State governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[20]

68.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and

---

[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Oct. 23, 2023).
[20] Federal Trade Commission, *Start With Security,* available at: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Oct. 23, 2023).

practices for business.[21] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

69.    The FTC recommends that businesses[22]:

    a.  Identify all connections to the computers where you store sensitive information.

    b.  Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

    c.  Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

    d.  Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to  prevent unauthorized access to that machine.

    e.  Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

    f.  Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

---

[21] Federal Trade Commission, *Protecting Personal Information: A Guide for Business,* available at: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed Oct. 23, 2023).
[22] *Id.*

g. Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls— settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

70. The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71. Because Plaintiff entrusted Defendant with her PII, Defendant had, and still has, a duty to the Plaintiff to keep her PII secure.

72.     Plaintiff reasonably expected that when she provided PII to 23ANDME, 23ANDME would safeguard her PII.

73.     23ANDME was at all times fully aware of its obligation to protect the personal and financial data, including Plaintiff's. 23ANDME was also aware of the significant repercussions if it failed to do so.

74.     23ANDME's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiffs' first, middle, and last name, addresses, Social Security number, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**Concrete Injuries are Caused by 23ANDME's Inadequate Security.**

75.     Plaintiff reasonably expected that 23ANDME would provide adequate security protections for her PII, and Plaintiff provided Defendant with sensitive personal information, including her name, address, and Social Security number.

76.     Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. Plaintiff and other individuals whose PII was entrusted with Defendant understood and expected that, as part of that relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received data security services that were of a lesser value than what they reasonably expected. As such, Plaintiff and Class Members suffered pecuniary injury.

77.     Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Plaintiff is now, and for the rest of her life will be, at a heightened and substantial risk of identity theft. Plaintiff and Class Members have also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

78.     The cybercriminals who obtained Plaintiff's and Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web."

Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in Plaintiff's name, including but not limited to:

      a. Obtaining employment;

      b. Obtaining a loan;

      c. Applying for credit cards or spending money;

      d. Filing false tax returns;

      e. Stealing Social Security and other government benefits; and

      f. Applying for a driver's license, birth certificate, or other public document.

79. In addition, if an individual's Social Security number is used to create false identification for someone who commits a crime, that individual may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

80. Accordingly, as a direct and/or proximate result of 23ANDME's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[23] Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Plaintiff's PII will exploit the data at a later date or re-sell it to other possible exploiters.

81. As a result of the Data Breach, Plaintiff has already suffered injuries, and now faces a substantial and imminent risk of future identity theft.

///

///

---

[23] Susan Ladika, *Study: Data Breaches Pose A Greater Risk* (July 23, 2014), https://www.foxbusiness.com/features/study-data-breaches-pose-a-greater-risk ((last accessed Oct. 3, 2023).

**Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft.**

82.     Data Breaches, such as the one Plaintiff and Class Members experienced, are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

83.     The FTC, like the United States Government Accountability Office, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[24]

84.     Theft of PII is also gravely serious as PII is a valuable property right.[25]

85.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which has conducted studies regarding data breaches:

> "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[26]

86.     PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the

---

[24] *See* https://www.identitytheft.gov/Steps (last accessed Oct. 23, 2023).
[25] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).
[26] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed Oct. 23, 2023).

CLASS ACTION COMPLAINT                    19

"cyber black-market" for years. Accordingly, because of 23ANDME's conduct, Plaintiff and Class Members must now worry about identity theft for years on end.

## CLASS ACTION ALLEGATIONS

87.     Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States whose Personal and Private Information was disclosed in the data breach.

88.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicate that the Class definition should be narrowed, expanded, or otherwise modified.

89.     Excluded from the Class are governmental entities, Defendant, its officers, directors, franchise owners, and any entity Defendant retains a controlling interest in; and the affiliates, legal representatives, and employees of Defendant.

90.     This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

91.     **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

92.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual Members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a.     Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's PII;

       b.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

       c.     Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

       d.     Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

       e.     Whether Defendant owed a duty to Plaintiff to safeguard her PII;

       f.     Whether Defendant breached its duty to Plaintiff to safeguard her PII;

       g.     Whether computer hackers obtained Plaintiff's PII in the Data Breach;

       h.     Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

       i.     Whether Plaintiff suffered legally cognizable damages as a result of Defendant's misconduct;

       j.     Whether Defendant's conduct was negligent;

       k.     Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

       l.     Whether Plaintiff is entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

93.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Class because Plaintiff's PII, like that of every other Class member, was compromised in the Data Breach.

94.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests. In addition, it would be impracticable and

undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

95. **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because he is a member of the Classes and her interests do not conflict with the interests of the Classes that he seeks to represent. The interests of the Members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel.

96. **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated Class members, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

97. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Classes as a whole.

98. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

        a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

## COUNT I

### Violation of California's Unfair Competition Law ("UCL") -

### Unlawful Business Practice

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

99.  Plaintiff realleges and incorporates by reference the paragraphs above as if fully set forth herein.

100.  As discussed above, 23ANDME's acts, practices, and omissions at issue in this matter, particularly those related to data security, were directed and emanated from its headquarters in Sunnyvale, California.

101.  As customers, Plaintiff and the Putative Class entrusted 23ANDME with their PII.

102.  By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

103.  Defendant stored the PII of Plaintiff and members of the respective Class in Defendant's electronic information databases. Defendant knew or should have known they did not employ reasonable, industry standard, and appropriate security measures that complied with federal regulations and that would have kept Plaintiff's and the other Class members' PII secure

1  and prevented the loss or misuse of Plaintiff's and the other Class members' PII. 23ANDME did

2  not disclose to Plaintiff and Class members that its data systems were not secure.

3    104.   Plaintiff and Class members were entitled to assume, and did assume, Defendant

4  would take appropriate measures to keep their PII safe when the complied with commercial

5  protocols and divulged their PII to Defendant. Defendant did not disclose at any time that

6  Plaintiff's PII was vulnerable to hackers because Defendant's data security measures were

7  inadequate, and Defendant was the only one in possession of that material information, which it

8  had a duty to disclose.

9    105.   Defendant violated the UCL by misrepresenting, both by affirmative conduct and

10  by omission, the safety of its many systems and services, specifically the security thereof, and

11  their ability to safely store Plaintiff and Class members' PII.

12    106.   Defendant also violated the UCL by failing to implement reasonable and

13  appropriate security measures or follow industry standards for data security, and by failing to

14  immediately notify Plaintiff and the other Class members of the Data Breach. If Defendant had

15  complied with these legal requirements, Plaintiff and the other Class members would not have

16  suffered the damages related to the Data Breach.

17    107.   Further, as alleged here in this Complaint, 23ANDME engaged in unlawful

18  business practices in the conduct of business transactions, in violation of the UCL, by and

19  including it's:

20      a.  failure to maintain adequate computer systems and data security practices to

21        safeguard PII;

22      b.  failure to disclose that its computer systems and data security practices were

23        inadequate to safeguard PII from theft;

24      c.  failure to timely and accurately disclose the Data Breach to Plaintiff and

25        Class members;

26

27

28

108.    23ANDME knew or should have known that its data security practices were inadequate to safeguard the PII of Plaintiffs and Class members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely.

109.    As a direct and proximate result of 23ANDME's violation of the UCL, Plaintiff and Class members are susceptible to damages from identity theft, which may take months if not years to discover and detect, given the far-reaching, adverse and detrimental consequences of identity theft and loss of privacy. The nature of other forms of economic damage and injury may take years to detect, and the potential scope can only be assessed after a thorough investigation of the facts and events surrounding the theft mentioned above.

110.    As a result of Defendant's unlawful business practices and violations of the UCL, Plaintiff and the members of the Class are entitled to restitution, disgorgement of wrongfully obtained profits, and injunctive relief.

## COUNT II

### Negligence

111.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

112.    As part of the regular course of its business operations Defendant gathered and stored the PII of Plaintiff and Class Members.

113.    Plaintiff and the Class were entirely dependent on Defendant to use reasonable measures to safeguard their PII and were vulnerable to the foreseeable harm of a security breach should Defendant fail to safeguard their PII.

114.    By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their

security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

115. Defendant owed a duty of care to Plaintiff and the Class to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the PII.

116. Defendant's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII by companies such as 23ANDME. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

117. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

118. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

119. Defendant gathered and stored the PII of Plaintiff and the Class as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

120. Defendant violated the FTC Act by failing to use reasonable measures to protect the PII of Plaintiff and Class Members and by not complying with applicable industry standards.

121. Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard their PII, and by failing to provide prompt notice without reasonable delay.

122. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who sought to use its services,

which is recognized by laws and regulations including but not limited to FTCA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and the Class or minimize the Data Breach.

123. Defendant's multiple failures to comply with applicable laws and regulations, and the violation of Section of 5 of the FTC Act constitutes negligence *per se*.

124. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

125. Defendant had full knowledge of the sensitivity of the PII, the types of harm that Plaintiff could and would suffer if the PII was wrongfully disclosed, and the importance of adequate security.

126. Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class had no ability to protect their PII that was in Defendant's possession.

127. Defendant was in a special relationship with Plaintiff and the Class with respect to the hacked PII because the aim of Defendant's data security measures was to benefit Plaintiff by ensuring that their PII would remain protected and secure. Only Defendant was able to ensure that its systems were sufficiently secure to protect Plaintiff's and other Class Members' PII. The harm to Plaintiff and the Class from its exposure was highly foreseeable to Defendant.

128. Defendant owed Plaintiff and other Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their PII, including acting to reasonably safeguard such data and providing notification to Plaintiff and the Class of any breach in a timely manner so that appropriate action could be taken to minimize losses.

129. Defendant had duties to protect and safeguard the PII of Plaintiff and other Class Members from being vulnerable to compromise by taking common-sense precautions when

dealing with highly sensitive PII. Additional duties that Defendant owed Plaintiff and the Class include:

    a. Exercising reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that individuals PII was adequately secured from impermissible release, disclosure, and publication;

    b. To protect Plaintiff's and the Class's PII in its possession by using reasonable and adequate security procedures and systems; and

    c. To promptly notify Plaintiff and the Class of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their PII.

130. Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the PII that had been entrusted to them.

131. Defendant breached its duties of care by failing to adequately protect Plaintiff and the Class's PII. Defendant breached its duties by:

    a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the PII in its possession;

    b. Failing to protect the PII in its possession using reasonable and adequate security procedures and systems;

    c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store PII;

    d. Failing to adequately train its employees to not store unencrypted PII in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

    e. Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's PII;

    f. Failing to mitigate the harm caused to Plaintiff and the Class;

  g. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

  h. Failing to promptly notify Plaintiff and other Class Members of the Data Breach that affected their PII.

132. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

133. 23ANDME, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class during the time the PII was within Defendant's possession or control.

134. Defendant's failure to provide timely and clear notification of the Data Breach to Plaintiff and the Class prevented Plaintiff and the Class from taking meaningful, proactive steps to securing their PII and mitigating damages.

135. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

136. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession; and (viii) future costs in terms of time, effort, and money

that will be expended to monitor bank accounts and credit reports, prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and members of the Class.

137.    As a direct and proximate result of Defendant's negligence, Plaintiff, and members of the Class have suffered (and will continue to suffer) other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non- economic losses.

138.    Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and members of the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

139.    Plaintiff and members of the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

## COUNT III

### Breach of Implied Contract

140.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

141.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving services provided by Defendant.

142.    Plaintiff and Class Members provided PII to Defendant (or its third-party agents) in exchange for services. In exchange, Defendant promised to protect their PII from unauthorized disclosure.

143.    At all relevant times Defendant promulgated, adopted, and implemented written a Privacy Policy whereby it expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

144.     On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

145.     Implicit in the agreement between Plaintiff, Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

146.     Defendant required Plaintiff and Class Members to provide their PII as part of regular business practices.

147.     When Plaintiff and Class Members provided their PII to Defendant as a condition of the consumer relationship, implied contracts were created with Defendant. As such, Defendant agreed to reasonably protect such information.

148.     Plaintiff and Class Members entered into the implied contracts with the reasonable expectation and belief that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

149.     Plaintiff and Class Members believed that 23ANDME would use part of the monies paid to Defendant under the implied contracts or the monies obtained from the benefits derived from the PII they provided to fund adequate and reasonable data security practices.

150.     Plaintiff and the Class would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures. The safeguarding of Plaintiff's and Class Member's PII was critical to realize the intent of the parties.

151. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

152. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII.

153. As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members sustained damages.

154. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

155. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Plaintiff and Class Members for a period longer than the inadequate one-year currently offered.

## COUNT IV

### Unjust Enrichment

156. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

157. Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of purchasing products from Defendant, and in connection thereto, by providing their PII to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII held by Defendant.

158. Defendant knew Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

159.     Acceptance of the benefit under these facts and circumstances make it inequitable for Defendant to retain that benefit without payment of the value thereof. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class member's PII. This is evidenced by Defendant's mentions of multifactor authentication and it's terms of service

160.     Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members thus suffered as a direct and proximate result of Defendant's decision to prioritize profits over the requisite data security.

161.     Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

162.     Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

163.     If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

164.     Plaintiff and Class Members have no adequate remedy at law.

165.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

166.     For the benefit of Plaintiff and Class Members, Defendant should be compelled to disgorge proceeds that they unjustly received from them into a common fund or constructive trust.

///

///

///

CLASS ACTION COMPLAINT                    33

# COUNT V

## Invasion of Privacy

167. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

168. Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

169. Defendant owed a duty to its current, former, and prospective employees, including Plaintiff and Class Members, to keep their PII confidential.

170. Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiff and Class Members.

171. The PII that was publicized during the Data Breach was highly sensitive, private, and confidential, as it included various PII.

172. Defendant acted with reckless disregard for the privacy of Plaintiff and Class Members rising to the level of (1) an intentional intrusion by Defendant, (2) into a matter that Plaintiff and Class Members have a right to keep private (i.e., their PII), and (3) which is highly offensive to a reasonable person.

173. Defendant acted knowingly when it permitted the Data Breach to occur; it had actual knowledge that its information security practices were inadequate and insufficient. Defendant knew that PII was stored for years after Defendant no longer had a legitimate use for such data. Defendant also knew that the PII it stored was not securely encrypted, and that its systems were vulnerable to foreseeable threats as a result of inadequate security measures and training.

174. Defendant was aware of the potential of a data breach and failed to adequately safeguard its systems and implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' data and PII.

175. Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PII to rise to the level of intentionally allowing the intrusion upon Plaintiff's and Class Members' seclusion.

176. The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members is highly offensive to a reasonable person.

177. Plaintiff and Class Members have been damaged by the invasion of their privacy in an amount to be determined at trial.

## COUNT VI

### Declaratory Judgment

178. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

179. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

180. An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs from further data breaches that compromise their PII.

181. Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

182. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. 23ANDME continues to owe a legal duty to secure its users' PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

b. 23ANDME continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff's and Class Members' PII.

183. The Court also should issue corresponding prospective injunctive relief requiring that 23ANDME employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

184. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at 23ANDME occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

185. The hardship to Plaintiff if an injunction does not issue exceeds the hardship to 23ANDME if an injunction is issued. Among other things, if another massive data breach occurs at 23ANDME, Plaintiff will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to 23ANDME of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and 23ANDME has a pre-existing legal obligation to employ such measures.

186. Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at 23ANDME, thus eliminating the additional injuries that would result to Plaintiffs and the millions of individuals whose PII would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Class and Plaintiff's attorneys as Class Counsel;

B.   For an order declaring the Defendant's conduct violates the causes of action referenced herein;

C.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.   Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class

E.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.   For prejudgment interest on all amounts awarded;

G.   For an order of restitution and all other forms of equitable monetary relief;

H.   For injunctive relief as pleaded or as the Court may deem proper; and

I.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees;

J.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: October 23, 2023        By: */s/ Eric M. Poulin*

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
    *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
    *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
    *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

-AND-

John Christian Bohren (SBN: 295292)
    *yanni@bohrenlaw.com*
**BOHREN LAW, APC**
8560 West Sunset Boulevard, 4th Floor
West Hollywood, CA 90069
Tel: 619-433-2803
Fax: 800-867-6779

*Attorneys for Plaintiff Elaine Fralix*