**BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: 23ANDME, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3098 |

**PLAINTIFF'S OPPOSITION TO MOTION FOR TRANSFER AND CONSOLIDATION
OF 23ANDME, INC. LITIGATION PURSUANT TO 23 U.S.C. § 1407**

## INTRODUCTION

Defendants 23andMe, Inc., 23andMe Pharmacy Holdings, Inc., and 23andMe Holding Co. (collectively, "23andMe") have filed a motion before the Panel to create a multidistrict litigation ("MDL") pursuant to 28 U.S.C. § 1407. Plaintiff Michele Bacus, as the putative class representative in *Bacus v. 23andMe, Inc.*, No. 1:23-cv-16828 (N.D. Ill.), respectfully submits this Interested Party Response in opposition to 23andMe's motion.

As detailed below, the criteria for transfer and consolidation are not satisfied. Viable alternatives to transfer and centralization under Section 1407 will better promote efficiency and convenience. Indeed, the vast majority of Related Actions (31 out of 34) are already concentrated in one federal district, and 30 of those have already been administratively related before one judge to eliminate duplication of work or the risk of inconsistent rulings. And of the three actions outside the Northern District of California, two (which are both in the Northern District of Illinois) present Illinois-specific causes of action and have already been reassigned to the same judge for disposition in a single proceeding.

Thus, crucial steps promoting efficiency and convenience and demonstrating the workability of informal centralization have already been taken. And the only remaining case outside the Northern District of California is in an adjacent district, making informal coordination easy. This minimal degree of numerosity weighs against formal centralization. Moreover, at least one of the parties opposes transfer. The Panel should therefore deny the motion, which improperly seeks to treat formal centralization as the first option, when this Panel has made clear it should be the last.

## BACKGROUND

23andMe provides a service to consumers that allows them to learn information about their ancestry and genetic predisposition to a variety of medical conditions and traits through DNA testing.

*Bacus*, ECF No. 5, Ex. 1 (Complaint), ¶ 1. This litigation arises from a breach of 23andMe's platform that led to the theft of the personal information of millions of 23andMe customers. *Id.* ¶ 9.

23andMe has indicated that the malicious actor(s) used a technique called "credential stuffing" to break into approximately 14,000 customers' accounts.[1] Hackers who use credential stuffing take a set of known login credentials (usernames and passwords) stolen in other data breaches to try to break into users' accounts on a large scale and then harvest data from those accounts. *Id.* ¶ 2. From there, the threat actor(s) accessed the data of millions more users through the "DNA Relatives" profile on 23andMe's platform. *See, e.g.*, *id.* ¶¶ 33, 45.

The information stolen includes names, sex, date of birth, profile photos, information on where customers lived, and a variety of genetic information and information derived from genetic testing, including the person's genetic heritage, ancestral origin, DNA relatives, and number of DNA segments shared with others on the platform. *Id.* ¶ 3. The malicious actor or actors responsible for the breach have already offered this data for sale on cybercrime forums and have specifically touted the ability to target consumers based on their genetic heritage based on "[t]ailored ethnic groupings." *Id.* ¶¶ 41, 61.

Ms. Bacus filed her action in Illinois state court, asserted only Illinois causes of action, and proposed to represent a class solely comprised of Illinois 23andMe customers. *See id.* ¶¶ 68, 74-113. Of the 31 actions identified by 23andMe in its motion to transfer and consolidate, *Bacus* is the only action filed in Illinois. All the rest are in California federal court, with 29 of them in the Northern District of California and one in the Central District of California. *See* MDL ECF No. 1-2. Since 23andMe filed its motion, an additional three actions have been related—two more in the Northern District of California and one more in the Northern District of Illinois. *See* ECF No. 45-1.

---

[1] *See, e.g.*, Eric Revell, *23andMe blames users for data breach, citing recycled passwords*, FOXBusiness (Jan. 3, 2024), https://www.foxbusiness.com/technology/23andme-blames-users-data-breach-citing-recycled-passwords.

**LEGAL STANDARD**

To warrant transfer and centralization under 28 U.S.C. § 1407(a), the at-issue actions must satisfy three criteria: (1) they mut share common issues of fact, (2) transfer must be for the convenience of parties and witnesses, and (3) transfer must advance the just and efficient conduct of the actions. *See, e.g.*, *In re Palizzio, Inc. Antitrust Litig.*, 407 F. Supp. 241, 241 (J.P.M.L. 1976). "Before transfer will be ordered, the Panel must be satisfied that all of the statutory criteria have been met." *In re Highway Acc. Near Rockville, Connecticut, on Dec. 30, 1972*, 388 F. Supp. 574, 575 (J.P.M.L. 1975).

Proceeding under Section 1407 "should be the last solution after considered review of all other options." *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). Those other options include voluntary cooperation or coordination among the parties and involved courts. *See, e.g.*, *In re: Boehringer Ingelheim Pharms., Inc., Fair Lab. Standards Act (FLSA) Litig.*, 763 F. Supp. 1377, 1378 (J.P.M.L. 2011) (denying centralization of actions where alternatives to formal centralization, such as voluntary cooperation among counsel and courts appeared viable). Moreover, "the mere possibility of additional actions does not support centralization." *Id.*

**ARGUMENT**

Transfer and centralization under Section 1407 here is inappropriate because it will not advance the just and efficient conduct of the actions, and there are viable and readily available alternatives to this "last solution" mechanism. Moreover, while there are common issues of fact surrounding the claims at issue, such questions of fact are not "sufficiently complex, unresolved and/or numerous to justify Section 1407 transfer." *In re Oxycontin Prods. Liab. Litig.*, 395 F. Supp. 2d 1358, 1359 (J.P.M.L. 2005) (denying transfer).

Here, the number of cases and districts involved is not large enough to make centralization under 28 U.S.C. § 1407 necessary. There are only 34 Related Actions, and of those cases, 31 are concentrated in the Northern District of California. *See* ECF No. 45-1. Of those Northern District of

California cases, 30 are already before the Honorable Edward W. Chen, who has already administratively related them to avoid duplication of labor and expense or conflicting results. *Id.*; *see also* N. D. Cal. Local Rule No. 3-12(a)(1)-(2) (actions are related when both "concern substantially the same parties, property, transaction or event," and it is "likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges").

Multiple plaintiffs in those 30 actions before Judge Chen have already informed him they plan to move for appointment of interim class counsel. *Santana v. 23andMe, Inc.*, Case No. 3:23-cv-05147-EMC (N.D. Cal.), ECF No. 54 at 9; *see also id.* at 2, 10, 11, 13, 15 (discussing resolution of anticipated motions to appoint interim class counsel). Appointment of interim class counsel in the cases related before Judge Chen will even further streamline their resolution by naming one group of counsel to act on behalf of the plaintiffs in all 30 of the cases before him. Moreover, the only three cases outside the Northern District of California are found in just two other districts: one in an adjacent district (the Central District of California) and two in the Northern District of Illinois. ECF No. 45-1 at 5. Given that only three districts are involved and appointment of interim class counsel in the 30 cases centralized before Judge Chen will essentially merge those into one proceeding (meaning that there are only 5 separate proceedings), "informal coordination among the small number of parties and involved courts in this litigation seems eminently feasible." *In re Bank of Am. Fraudulent Acct. Litig.*, No. MDL 3088, 2023 WL 8538726, at *2 (J.P.M.L. Dec. 6, 2023).

Indeed, just yesterday (January 17, 2024), the judge in *Bacus* reassigned the later-filed Northern District of Illinois case (*Hu v. 23andMe, Inc.*, Case No. 1:23-cv-17079 (N.D. Ill)) so that the two cases may be adjudicated in a single proceeding by one judge. *See Hu*, ECF No. 18; N.D. Ill. Rule 40.4(b) (authorizing reassignment of related cases where "the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort" and "the cases are susceptible of

4

disposition in a single proceeding"). As a practical matter, that brings the number of separate proceedings down to just four.

Given the high degree of informal centralization that has already occurred at this early stage of litigation (31 of 34 cases concentrated in one district and 30 of those 31 already related by one judge, thus effectively collapsing them into one proceeding), this litigation contains only a minimal multidistrict component and thus lacks the complexity necessary to warrant centralization as an MDL. *See DaimlerChrysler Corp. Seat Belt Buckle Prods. Liab. Litig.*, 217 F. Supp. 2d 1376, 1377 (J.P.M.L. 2002) ("Given the minimal number of actions involved in this docket, movant has failed to persuade us that any common questions of fact are sufficiently complex to warrant Section 1407 centralization); *In re Forcefield Energy, Inc., Sec. & Derivative Litig.*, 154 F. Supp. 3d 1351, 1352 (J.P.M.L. 2015) (explaining that where cases are "pending in adjacent districts and involve only a small number of counsel and judges," "cooperative efforts by the parties and involved courts are superior to formal centralization").

The presence of distinct legal issues in the two Illinois actions also cuts against centralization. *See In re Wells Fargo Paycheck Prot. Program Litig.*, 481 F. Supp. 3d 1339, 1340 (J.P.M.L. 2020) (presence of "distinct factual and legal issues" in action demonstrated that including it in MDL would not serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation). Those two actions assert claims under the Illinois Genetic Information Privacy Act ("GIPA"), 410 ILCS 513/1, *et seq.*, and Illinois common law. Those claims are better resolved in Illinois in an Illinois district court, as they are distinct from the California and multistate common law claims brought in the California actions. *In re CleanNet Franchise Agreement Cont. Litig.*, 38 F. Supp. 3d 1382, 1383 (J.P.M.L. 2014) (denying centralization in part because actions presented distinct causes of action).

Even if informal coordination were not feasible without transferring the three Illinois and Central District of California actions (it is feasible), transfer and consolidation under Section 1407 would still not be the proper mechanism. Rather, transfer under 28 U.S.C. § 1404 would be the

preferable approach. Because there are only three cases outside the Northern District of California, transfer of those outlying actions under Section 1404 would "significantly reduce or even eliminate the multidistrict character of this litigation." *In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d at 1414 (J.P.M.L. 2021). However, 23andMe filed its motion under Section 1407 far too prematurely to even allow for discussions of a transfer under Section 1404.

This further cuts against centralization, as this Panel's prior decisions make clear that transfer pursuant to Section 1404 is preferable to transfer and centralization under Section 1407. *See In re General Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d at 1415 (J.P.M.L. 2021) (denying transfer where there was reasonable prospect that resolution of pending and anticipated § 1404 motions would eliminate multidistrict character of a litigation); *In re 3m Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d at 1347-47; *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d at 1380; *In re Dollar Tree Stores, Inc. Fair Lab Standards Act (FLSA) and Wage and Hour Litig.*, 829 F. Supp. 2d 1376, 1377 (J.P.M.L. 2011) ("[E]ither informal coordination among the parties and the courts or Section 1404 transfer, if appropriate, are preferable alternatives to Section 1407 centralization."). Because transfer and centralization under Section 1407 should be used as a "last solution," it would be wholly premature now where the parties have barely addressed the possibility of transfer under Section 1404. *See, e.g.*, *In re Best Buy Co., Inc. California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d at 1378; *In re Kronos Customer Data Sec. Breach Litig.*, 619 F.Supp. 2d at 1378.

Nor can the prospect of future cases that might be filed, but have not yet been filed, lend any support to 23andMe's request for formal centralization. *See In re Zimmer, Inc. v. Centralign Hip Prosthesis Prods. Liab. Litig. (No. II)*, 366 F. Supp. 2d 1384, 1385 (J.P.M.L. 2005) ("Proponents of transfer have alluded to the prospect of additional actions that are or may soon be pending in additional districts as a reason for ordering centralization. We note, however, that such actions are not now before the Panel, and their pendency does not create a persuasive reason for transfer of the five Connecticut actions

that are."). Unless and until 23andMe shows that any such actions exist, its request for transfer and consolidation is premature at best.

Still further, 23andMe's motion to transfer and centralize is opposed. This opposition to the motion additionally weighs against transfer and centralization. *See, e.g.*, *In re Kronos Customer Data Security Breach Litig.*, 619 F. Supp. 3d 1354, 1355 (J.P.M.L. 2022) (declining to centralize where 4 out of 5 plaintiffs and both defendants opposed centralization); *In re Accellion, Inc., Customer Data Security Breach Litig.*, 543 F. Supp. 3d 1372 (J.P.M.L. 2021) (denying transfer where all responding parties except two tag-along plaintiffs opposed centralization); *In re Baby Food Marketing, Sales Practices and Products Liab. Litig.*, 544 F. Supp. 3d 1375, 1377 (J.P.M.L. 2021) (citing "strong opposition of numerous plaintiffs and defendants" and remarking "[t]ellingly, centralization is opposed by plaintiffs in 39 actions"); *see also In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017) ("Critically, not a single party to any of the six actions pending outside the District of South Carolina supports centralization.").

In sum, transfer and centralization under Section 1407 would be manifestly premature, there are other avenues available to streamline this litigation, the numerosity and level of complexity in the Related Actions do not support transfer and centralization, the Illinois actions present causes of action distinct from those in the already informally centralized California actions, and transfer and centralization will not advance the just and efficient conduct of the actions.

## CONCLUSION

For all these reasons, the Panel should deny the motion for transfer and centralization.


Dated: January 18, 2024                                  Respectfully submitted,

                                                        */s/ Hassan A. Zavareei*
                                                        Hassan A. Zavareei

**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-0900
*hzavareei@tzlegal.com*